## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

**THE DAVID BRAM REVOCABLE TRUST, on behalf of David Bram, and UNITED RESTORATION LLC,** A Colorado corporation,

> Plaintiff,

v.

**STATE FARM FIRE AND CASUALTY COMPANY**, an Illinois corporation,

> Defendant.

---

## COMPLAINT AND JURY DEMAND

---

COMES NOW, Plaintiffs, the David Bram Revocable Trust, on behalf of David Bram and United Restoration LLC ("Plaintiffs"), by and through their attorneys, Furtado Law PC, for their Complaint against the above-named Defendant, and states as follows:

### I.   NATURE OF THE ACTION

1. Plaintiffs bring this action seeking economic and non-economic damages related to Defendant's breach of an insurance contract and statutory claims pursuant to C.R.S. §§10-3-1115 and 10-3-1116 arising from Defendant's unreasonable delay and denial of timely payment for insurance benefits including recoverable depreciation.

## II.   PARTIES

2. The David Bram Revocable Trust, ("Bram") is a trust set up to handle David Bram's estate after his death and is managed by trustees Renee Bram Rockford and Linda Bram. Renee Rockford is a Colorado resident that resides at 147 Bellaire Street, Denver, CO 80220. Linda Bram is a Colorado resident that resides at 118 South Locust Street, Denver 80224.

3. United Restoration LLC, ("United") is a Colorado corporation with its principal place of business at 3560 Rebecca Lane, Colorado Springs, CO 80917.

4. State Farm Fire and Casualty Company ("Defendant") is a foreign corporation with its principal place of business located in Illinois and is authorized to do business in Colorado.

## III. JURISDICTION AND VENUE

5. Jurisdiction is asserted pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1391. The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. Venue is proper because Defendant's insurance policy was purchased in Colorado and was intended to provide coverage for a property located in Colorado.

## IV. GENERAL ALLEGATIONS

6. David Bram sought and obtained an insurance policy, Policy No. 96-B5-J598-1 (hereinafter "the Policy"), from Defendant for commercial policy located at 124 Delaware Drive, Colorado Springs, CO 80909 (hereinafter "the Property").

7. On or about July 28, 2016, a hail and windstorm hit Plaintiff's Properties causing property damage.

8. Upon information and belief, on about September 2016, Mr. Bram filed his claim with Defendant.

9. On or about October 1, 2016, Defendant sent an introductory claim letter to Mr. Bram explaining the claim process.

10. On or about December 15, 2016, Defendant drafted an estimate for repairs related to the date of loss with a replacement cost value of $1,928.36. Defendant then sent Mr. Bram a coverage decision letter with its estimate. Upon information and belief, however, Defendant did not explain the basis for its determination of damage that there was no damage on the building from the loss in violation of Colorado's Consumer Protection Act. Defendant only cited the wear and tear exclusion and stated there was no coverage for the interior damage.

11. Upon information and belief, Mr. Bram then passed away early in the claim process and Renee Bram Rockford and Linda Bram set up the David Bram Revocable Trust to manage his estate. Ms. Rockford and Ms. Bram were the trustees of the trust.

12. On or about November 30, 2017, Plaintiff hired Mark Rothbauer with Compass Adjusting, Inc. as public adjuster on the claim.

13. Upon information and belief, in early December 2017, Mr. Rothbauer hired Martin Shields to inspect Mr. Bram's roofs for damage associated with the date of loss and to assess a proper repair methodology for that observed damage.

14. Upon information and belief, in early December 2017, Mr. Rothbauer also hired David Draper with Draper Consulting, LLC to also evaluate the HVAC units at Mr. Bram's property.

15. On or about December 6, 2017, Mr. Shields performed a roofing inspection at the Property.

16. On or about December 14, 2017, Mr. Shields issued his report concluding that:

    a. The upper and lower roofs at the property were damaged by hail damage which is functional in nature. Specifically, the test cuts on the lower and upper roof showed bruising like fractures on the underside on the membrane. Mr. Shields also noted bruising on the top smooth-coated modified bitumen roofing membrane. Finally, Mr. Shields verified the damage was functional in nature based upon his observations of associated interior leaks.

    b. The observed hail damage degrades the overall physical condition of the roofs. Therefore, Mr. Shields recommended replacement of the roof to bring it to pre-loss conditions.

    c. Hail-impacted roof appurtenances such as the metal flue caps and vents should be removed and replaced.

    d. The HVAC condenser coil fins have been damaged beyond repair and the units must be replaced. Mr. Shields noted the prior repairs of combining the fins were unsuccessful.

17. On or about December 15, 2016, Defendant revised its estimate to a replacement cost value of $1,935.56. On this amount, Defendant then paid Plaintiff Bram $884.91.

18. On or about January 5, 2018, Mr. Draper sent his report to Mr. Rothbauer concluded that the coil fin damage at Mr. Bram's property should not be repaired by combing the fins as this repair methodology does not restore efficiency of the HVAC units to pre-loss conditions.

19. On or about January 31, 2018, Mr. Rothbauer drafted an estimate based upon Plaintiff Bram's expert reports with a replacement cost value of $722,471.50.

20. On or about February 7, 2018, Mr. Rothbauer submitted his letter of representation to Defendant summarizing Defendant's cursory investigation of the claim as outlined by Mr. Bram's concurrently disclosed expert reports.

21. Included this letter, Mr. Rothbauer submitted Martin Shield's roof inspection engineering report, the parties' previous infrared inspection report, David Draper's mechanical HVAC engineer report and Compass Adjusting's repair estimate with roof diagram. Mr. Rothbauer also sent additional photographs and offered to settle the matter for $722,471.50

22. On or about April 2, 2018, Mr. Latham and Defendant's adjuster/engineer re-inspected the property for damage related to the date of loss. Upon information and belief, Defendant's adjuster only conducted a cursory re-inspection of Mr. Bram's property and specifically he failed to inspect the interior of the building and refused to conduct core samples on the roof to confirm if it was damaged. Instead, Defendant's adjuster/engineer only conducted a visual inspection of the

roof contrary to industry standards and took selective photographs of the roof to support Defendant's previous findings.

23. On or about April 26, 2018, Mr. Latham emailed Defendant asking for an update on Defendant's engineering reports and criticizing Defendant's last inspection because Defendant's adjuster refused to do any test cuts into the roof which is industry standard on claims like this. Mr. Latham also asked for a follow-up inspection to look at new roof looks.

24. In this email, Mr. Latham also stated that Plaintiff was selling the building soon and that repairs would be completed by May 1, 2018.

25. On or about May 1, 2018, Mr. Latham email Defendant complaining of Defendant's failure to follow-up on his previous emails.

26. On or about May 7, 2018, Mr. Pantoya sent Mr. Rothbauer a letter stating that pursuant to the Policy's language, Mr. Bram could not transfer his rights under the Policy without written consent of Defendant. Mr. Pantoya also reported that Defendant's engineers could meet for re-inspection shortly.

27. Upon information and belief, Mr. Pantoya misrepresented Colorado law regarding post-loss assignment as such assignments are generally held to be valid even without an insurer's consent.

28. Upon information and belief, shortly after, Defendant's engineer with Envista Forensics inspected the property with Mr. Rothbauer.

29. Upon information and belief, during the inspection of the roof, Defendant engineer refused to conduct core samples and stated he was only doing a visual inspection. Defendant's engineer also misrepresented the coil fin repairs as a

plausible repair methodology even though the issue is whether such repairs return the HVAC unit pre-loss conditions.

30. Upon information and belief, since this time and before the Property sale, Bram assigned its breach of contract claim to its repair contractor performing repairs United Restoration LLC. Upon information and belief, Bram did not assign or otherwise transfer its right to sue Defendant for statutory bad faith.

31. On or about June 26, 2018, Mr. Rothbauer drafted a final estimate of damages to the property with a replacement cost value of $868,005.62.

32. Although Plaintiffs provided Defendant with the necessary documentation to recover covered benefits, Defendant has unreasonably delayed and denied Plaintiffs' claim for benefits by failing to conduct a reasonable investigation of Plaintiffs' damages and refusing to add required line items on its estimate.

33. As a consequence of Defendant's conduct in unreasonably delaying and denying Plaintiffs' claim for benefits due and owing under the Policy, Plaintiffs have incurred and continues to incur damages.

## V.     FIRST CLAIM FOR RELIEF
(*Breach of Contract*)

34. Plaintiffs incorporate the allegations contained in the paragraphs above as if fully set forth herein.

35. The Policy creates a contract of insurance.

36. By its actions, as described above, Defendant breached the contract of insurance.

37. As a direct and proximate result of said breach, the Plaintiffs are entitled to damages in an amount to be determined at trial.

## VI. SECOND CLAIM FOR RELIEF
*(Violation of C.R.S. §10-3-1115 and Relief Pursuant to §10-3-1116)*

38. Plaintiffs incorporate the allegations contained in the paragraphs above as if fully set forth herein.

39. C.R.S. §10-3-1115 forbids an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

40. Plaintiff Bram is a first-party claimant under C.R.S. §10-3-1115.

41. Defendant has denied the Plaintiff Bram's claim without a reasonable basis within the meaning of C.R.S. §10-3-1115.

42. C.R.S. §10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed by an insurer may bring an action in Colorado district court to recover reasonable attorneys' fees and court costs and two times the covered benefit.

43. Because of Defendant's actions, as described above, violate C.R.S. §10-3-1115, Plaintiffs bring this claim to recover its reasonable attorneys' fees and court costs and two times the covered benefit, as allowed under C.R.S. §10-3-1116.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask that this Court enter judgment in its favor and against Defendant on its Claims for Relief as follows:

1. Damages for Defendant's breach of contract including its breach of the appraisal provision;

2. All unpaid covered benefits owed under the party;

3. Two times the amount of all covered benefits under the Policy;

4. Costs, expert witness fees, and attorneys' fees per statute incurred in

prosecuting its claims;

5.      Pre- and post-judgment interest; and

6.      For such other and further relief as this Court may deem just.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS.**

Respectfully submitted this 27th day of June 2018.

FURTADO LAW PC

*/s/ Nathanael Archuleta*
Nathanael Archuleta, Esq.
David Furtado, Esq.
Matthew Hamblin, Esq.
Furtado Law PC
3773 Cherry Creek North Drive,
Ste. 575
Denver, CO 80209
Telephone: (303) 755-2929
Email:        Nathanael@furtadolaw.com
              Dfurtado@furtadolaw.com
              Matthew@furtadolaw.com
Attorneys for Plaintiffs